# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-0158V

| | |
|---|---|
| NANOYA BURGAN,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: May 21, 2025 |

*Bruce William Slane, Law Office of Bruce W. Slane, P.C., White Plains, NY, for Petitioner.*

*Michael Bliley, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On February 15, 2022, Nanoya Burgan filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, or in the alternative a caused-in-fact injury, after receiving an influenza ("flu") vaccine on October 23, 2020. Petition at 1, ¶¶ 2, 29-30. She further alleges that her "left shoulder pain began the night of October 23, 2020." *Id.* at ¶ 9; *accord.* Ex. 2 at ¶ 5 (Petitioner's affidavit).

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

The parties dispute Petitioner's success in establishing the pain onset needed for a Table SIRVA. For the reasons discussed below, I find that the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination, and that she has satisfied the other requirements of a compensable Table SIRVA injury. Petitioner is thus entitled to compensation under the Vaccine Act.

## I.     Relevant Procedural History

Approximately one month after filing the Petition, Ms. Burgan filed the affidavit and some of the medical records required under the Vaccine Act. Exs. 1-8, filed Mar. 18, 2022, ECF No. 6; *see* Section 11(c). Over the subsequent three months, she filed her remaining medical records. Exs. 10-11, ECF Nos. 10-13. On July 27, 2022, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 17.

Approximately one year later, Respondent expressed a willingness to engage in settlement discussions. Status Report, filed July 12, 2023, ECF No. 23. Over the subsequent six months, the parties attempted to reach an informal resolution. *E.g.,* Status Report, filed Oct. 18, 2023, ECF No. 29. On January 23, 2024, they informed me they had reached an impasse. Joint Status Report, ECF No. 32.

On March 7, 2024, Respondent filed his Rule 4(c) Report opposing compensation in this case. ECF No. 33. Emphasizing Petitioner's failure to mention any left shoulder pain at a primary provider ("PCP") appointment fourteen-days post-vaccination or to seek treatment until 53 days had past, Respondent argues that "the record is insufficient to preponderantly prove onset of SIRVA symptoms within the requisite period." *Id.* at 5. He insists that Petitioner description of an *insidious* pain onset *after* vaccination is vague and does not equate to pain onset within 48 hours. *Id.*

## II.    Finding of Fact Regarding Onset

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a) XIV.B. (influenza vaccination) (2017); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

### A.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined.

3

*Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

      **B.**    **Analysis**

I make the onset finding after a complete review of the record to include all medical records, affidavits or declarations, and additional evidence filed. Specifically, I base the findings on the following evidence:

- Prior to vaccination, Petitioner suffered from diabetes, high blood pressure, and high cholesterol. Ex. 5 at 1-120; *see generally* Exs. 10-11. She was diagnosed with breast cancer in late 2018, and underwent a lumpectomy, radiation, and medication. Exs. 3, 8 (oncology and hospital records). On October 23, 2020, Petitioner was determined to be "[f]ully active, able to carry on all pre-disease performance without restriction." Ex. 3 at 3.

- At this last oncology appointment on October 23, 2020, Petitioner received the flu vaccine intramuscularly in her left deltoid. Ex. 3 at 88-89.

- Fourteen days later, on November 6, 2020, Petitioner visited her PCP for a refill of her medications and lab work. Ex. 5 at 125-37. She was described as "doing well this visit with no acute complaints." *Id.* at 125.

- Although there is no mention of left shoulder pain at her November 6, 2023 PCP visit (*id.* at 125-34), an ultrasound of Petitioner's upper left extremity

4

was performed on November 13, 2020 (Ex. 4). "Arm pain and swelling" was provided as the reason for this testing, and the ultrasound was "[n]egative for sonographic evidence of deep vein thrombosis in the left upper extremity." *Id.*

- From November 11 to December 17, 2021, Petitioner also underwent additional lab work. Ex. 5 at 138-44, 146-50. It was noted that Petitioner "is here because we have to do more lab work up due to findings from last time." *Id.* at 138.

- On January 6, 2021, Petitioner returned to her PCP, complaining of "left shoulder pain [that] started after she received her flu shot back in [O]ct 2020." Ex. 5 at 151. Describing her pain as radiating down her arm to her elbow and worst with overhead movements, she denied any numbness, tingling, or weakness. *Id.* There was an entry noting that the results of the November 13th ultrasound were negative. *Id.* The results of x-rays taken that day were unremarkable, and Petitioner was referred to an orthopedist. *Id.* at 155, 157. She declined anti-inflammatory medication. *Id.* at 155.

- One month later, on February 9, 2021, Petitioner attended her first orthopedic appointment for left shoulder pain. Ex. 6 at 3. Reporting a duration of four months, she characterized her pain onset as "insidious," stating that it began "after flu shot." *Id.* Petitioner described the quality of her pain as initially sharp, dull, and tingling, and currently dull. *Id.*

- The orthopedist observed some slight limitations in Petitioner's range of motion ("ROM"). Ex. 6 at 4. After reviewing x-rays taken that day, as well as the results of the previously performed ultrasound, the orthopedist diagnosed Petitioner with a left rotator cuff injury and tendonitis, referred her to PT, and administered an ultrasound guided steroid injection. *Id.* at 5.

- It appears that Petitioner completed her PT intake paperwork on February 18, 2021, but did not begin her treatment until several months later. *See* Ex. 7 at 20-27. In that paperwork, she stated that her condition began "10 – 20." *Id.* at 20.

- Six weeks later, on March 23, 2021, Petitioner returned to the orthopedist, complaining of worsening pain, moderate in severity, and "continuous since onset." Ex. 6 at 18. Observing that Petitioner "has not started PT" (*id.*), the

5

- orthopedist ordered an MRI[3] and provided a PT referral to a specific clinic. *Id.* at 22; *see* Ex. 7 at 31 (PT referral).

- At her first PT session on April 15, 2021, Petitioner again attributed her left shoulder pain to the flu vaccine she had received in October 2020, reporting that she "ha[d] pain on her shoulder since then." Ex. 7 at 1. Estimating the severity of her pain as eight out of ten, Petitioner exhibited moderate difficulty performing most of the listed tasks. *Id.* at 3.

- Throughout the remainder of April and May 2021, Petitioner attended seven more PT sessions. Ex. 7 at 6-19. By her fifth session on May 13, 2021, she was assessed as "progressing well, . . . benefitting from wet cups during manual therapy to assist with greater tissue extensibility." Ex. 7 at 14. She reported "pain-free ROM after manual therapy with decreased pain through AROM after." *Id.*

- At her last PT session on May 27, 2021, Petitioner "demonstrate[d] increase ROM to L shoulder into flexion and internal rotation." Ex. 7 at 19. She was assessed as requiring further PT. *Id.*

- At her next orthopedic appointment approximately six weeks later (July 6, 2021), it was noted that Petitioner had stopped going to PT due to her insurance company's denial of coverage. Ex. 6 at 32. She reported that "[s]he does feel better with the home exercise program and the intra-articular steroid shot." *Id.* The orthopedist instructed Petitioner to continue performing her home exercises and taking anti-inflammatory medication, adding that a second steroid injection or arthroscopic surgery would be considered thereafter. *Id.* at 33.

- In her affidavit, executed on December 27, 2021, Petitioner stated that "[her] left shoulder pain began the night of October 23. 2021." Ex. 2 at ¶ 5. She described "sharp and intense pain in [her] whole left arm, which radiated down to [her] hand." *Id.*

The record as a whole supports Petitioner's contention of left shoulder pain beginning the night of vaccination (October 23, 2020). *See* Petition at 4; Ex. 2 at 5 (affidavit). When seeking treatment from her PCP, orthopedist, and physical therapist, Petitioner consistently reported that her left shoulder pain after receiving the flu vaccine in October 2020. Ex. 5 at 151; Ex. 6 at 3; Ex. 7 at 1, 20. While these close-in-time histories

---

[3] It does not appear that Petitioner underwent a left shoulder MRI.

6

were based upon information provided by Petitioner, they still should be afforded greater weight than more current representations, as they were uttered contemporaneously with Petitioner's injury for the purposes of obtaining medical care. The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied <u>to</u> or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that information provided by Petitioner to a treater and contained in a contemporaneous record deserves weight, and should not be considered subjective merely because it *came* from a patient, rather than physician.

Regarding Respondent's arguments about vague references to pain onset, I note that in many prior cases I have deemed such objections unpersuasive, especially when the full descriptions provided by a petitioner clearly establish onset within 48 hours. *See,* e.g., *Merwitz v. Sec'y of Health & Hum. Servs.*, 2022 WL 17820768, at *3 (Fed. Cl. Spec. Mstr. Nov. 14, 2022). In this case, Petitioner consistently attributed both the onset and cause of her left shoulder pain to the flu vaccine she received. And there is a dearth of evidence supporting a later pain onset.

At first glance, it appears that Petitioner delayed seeking treatment until 53-days post-vaccination, while failing to mention pain at a PCP visit on November 6, 2020, only fourteen days post-vaccination. But the performance of an ultrasound for left arm pain and swelling on November 13, 2020 (only three weeks post-vaccination) supports the inference that these symptoms were likely discussed at the PCP appointment or shortly thereafter. And, as I have previously stated in numerous decisions and rulings, "it is often common for a SIRVA petitioner to delay treatment, thinking his/her injury will resolve on its own." *Bergstrom v. Sec'y of Health & Hum. Servs.,* No. 19-0784V, 2020 WL 8373365, at *3 (Fed. Cl. Spec. Mstr. Dec. 4, 2020).

All of the above amounts to preponderant evidence establishing Petitioner likely suffered left shoulder pain the same day as her vaccination. Petitioner has thus satisfied the second criterion for a Table SIRVA injury.

### III.   Additional Requirements for Entitlement

#### A.   Legal Standards

In addition to requirements concerning the vaccination received, symptoms duration, and the lack of other award or settlement,[4] a petitioner must establish that she

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited

7

suffered an injury meeting the remaining Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

---

exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Analysis

Respondent has stated no further objections to compensation, and I find Petitioner has otherwise satisfied all criteria for a Table SIRVA injury following receipt of the flu vaccine. There is no evidence of prior left shoulder pain, inflammation, or dysfunction or an alternative cause for Petitioner's symptoms. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv) (first and fourth QAI criteria). And Petitioner exhibited pain and limitations in ROM solely in her left, injured shoulder. *E.g.,* Ex. 6 at 4; Ex. 7 at 19 (orthopedic and PT records); *see* 42 C.F.R. § 100.3(c)(10)(iii) (third QAI criterion). As I have determined in this ruling, the record supports a finding that Petitioner suffered pain within 48 hours of vaccination. *See supra* Section II.B.; 42 C.F.R. § 100.3(c)(10)(ii) (second QAI criterion).

Additionally, the medical records show that Petitioner suffered the residual effects of her injury for more than six-months. Ex. 7 at 6 (noting pain at a level of eight out of ten at Petitioner's second PT session on April 26, 2021); *see* Section 11(c)(1)(D)(i) (six-month severity requirement). And the vaccine record shows Petitioner received the flu vaccine at her oncology clinic in Lawrenceville, Georgia. Ex. 3 at 88-89; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Furthermore, there is no evidence that Petitioner has collected a civil award for her injury. *See* Section 11(c)(1)(E) (lack of prior civil award). Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

### IV. Appropriate Amount of Compensation

Although I have found Petitioner entitled to compensation, I do not expect the amount awarded for Petitioner's past pain and suffering to be significant. Petitioner made good progress during PT sessions in April and May 2021. Ex. 7. At her last orthopedic appointment on July 6, 2021, she reported continued improvement from her home exercise program and steroid injection. Ex. 6 at 32.

Furthermore, there is no evidence in the record as it currently stands that Petitioner required additional treatment beyond July 2021. For example, it appears she never received the second steroid injection offered by her orthopedist if her symptoms

continued. Unlike her PT, there is no evidence showing this treatment would not have been covered by medical insurance.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master